# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>PC-2024-02508 |
| **Plaintiff**<br>50 EXCHANGE TERRACE, LLC<br>v.<br>MOUNT VERNON SPECIALTY INSURANCE COMPANY<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br><br>**Address of the Plaintiff's Attorney or the Plaintiff** |
| Licht Judicial Complex<br>Providence/Bristol County<br>250 Benefit Street<br>Providence RI 02903<br>(401) 222-3250 | **Address of the Defendant**<br>1190 DEVON PARK DR.<br>WAYNE PA 19087-2150 |

**TO THE DEFENDANT, MOUNT VERNON SPECIALTY INSURANCE COMPANY:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/6/2024. | /s/ Stephen Burke<br>Clerk |

Witness the seal/watermark of the Superior Court

**STATE OF RHODE ISLAND** **SUPERIOR COURT**
**PROVIDENCE, SC**

50 EXCHANGE TERRACE, LLC,

Plaintiff,

v.

C.A. No.:
**Jury Trial Demanded**

MOUNT VERNON SPECIALTY INSURANCE COMPANY, and DOES 1 through 10,

Defendants.

**COMPLAINT**

**NOW COMES**, the Plaintiff, 50 EXCHANGE TERRANCE (hereinafter, "50 Exchange" and/or the "Plaintiff"), acting by and through the undersigned counsel, and hereby submits the within Complaint against Defendants, MOUNT VERNON SPECIALTY INSURANCE COMPANY, and DOES 1 through 10.

**PARTIES**

1. Plaintiff, 50 Exchange is a limited liability company organized under the laws of Rhode Island. 50 Exchange was established for the purpose of owning and operating the property located at 50 Exchange Terrace, Providence, RI 02903.

2. 50 Exchange is informed and believes, and on that basis alleges, that Defendant, Mount Vernon is a Nebraska corporation with its principal place of business in Pennsylvania. 50 Exchange is informed and believes, and on that basis alleges, that Mount Vernon is authorized to transact business, and is transacting business, in the State of Rhode Island.

3. 50 Exchange is ignorant of the true names and capacities, whether individual, associate, partnership, corporate, or otherwise, of the defendants fictitiously designated herein as Does 1 through 10, and therefore sues those defendants by these fictitious names. 50 Exchange

will seek leave of court to amend this complaint when the true names and capacities of these fictitiously designated defendants have been ascertained. 50 Exchange is informed and believes, and on that basis alleges, that Does 1 through 10, in some way unknown to 50 Exchange, have underwritten or provided insurance coverage to it, or are otherwise responsible for losses alleged herein, and that Does 1 through 10 are authorized to, and do, transact insurance business in the State of Rhode Island and Providence County.

## JURISDICTION

4. This Honorable Court has jurisdiction over the above-captioned matter pursuant to R.I. Gen. Laws §§ 8-2-13, 8-2-14, and 9-1-30 *et seq*.

5. This Court has jurisdiction over the parties to this action, as each party has sufficient minimum contacts and has principally availed itself of the jurisdiction of this state. In addition, the circumstances and conduct alleged herein which are the subject matter of this Complaint occurred substantially within Rhode Island.

## NATURE OF THE LAWSUIT

6. This is action by 50 Exchange to collect bargained-for coverage under a property insurance policy the complied with all policy requirements for losses suffered as a result of extensive water damage caused by ruptured pipes at the property located at 50 Exchange Terrace in Providence, Rhode Island (the "Property"). 50 Exchange promptly turned to its property insurer, Mount Vernon, seeking coverage for the loss.

7. Mount Vernon acknowledged coverage for 50 Exchange's losses, yet it has failed to honor its coverage obligations to their full extent. Mount Vernon fraudulently mispresented to Plaintiff that they would provide $1,531,170.65 in coverage (even though the Policy provided up to $2,775,000 for physical damage to the Property).

8. Despite its promise, Mount Vernon fraudulently withheld $542,064.01 in coverage for supposed "depreciation" at the Property and only provided $984,105.34 in actual coverage. In other words, Mount Vernon always knew that they were never going to provide the full $1,531,170.65. This conduct by Mount Vernon induced 50 Exchange to detrimentally rely

upon the full $1,541,170.65 in order to start making the necessary repairs to the property. As a result, 50 Exchange has now spent more than the $984,105.34 Mount Vernon promised and 50 Exchange continues to be harmed each day the property goes unrepaired.

9. Through its unreasonable conduct, described below, Mount Vernon has breached its contractual obligations, acted in bad faith, and taken positions that are contrary to the facts, the law, and insurance industry custom and practice.

## THE POLICY

10. Mount Vernon issued Policy No. DPS4000961B to 50 Exchange Terrace for the August 14, 2020, to August 14, 2021, policy period (the "Policy"). A true and correct copy of the lease with the relevant portions of the Policy is attached as Exhibit A and incorporated herein by reference.

11. In the Policy, Mount Vernon promised to "pay for direct physical loss of or damage to [the Property] caused by or resulting from any Covered Cause of Loss." Policy, Building and Personal Property Coverage Form § A. Covered Property includes the "building or structure" at the Property. *Id.* § A.1.

12. The Policy includes a "Functional Building Valuation" endorsement that specifies the minimum amount that Mount Vernon will pay in the event of a covered loss. *See generally id.*, Functional Building Valuation Endorsement.

13. Subject to its terms and conditions, and subject to a $5,000 deductible, the Policy provides up to $2,775,000 in coverage for physical damage to the Property.

14. To the extent not waived or otherwise excused, 50 Exchange has complied with all terms and conditions precedent in the Policy. Therefore, 50 Exchange is entitled to all benefits of the insurance provided by the Policy.

## MOUNT VERNON'S BREACHES AND BAD FAITH CONDUCT

15. On or about January 4, 2021, Property suffered extensive water damage after pipes at the property froze and burst.

16. 50 Exchange timely reported the water damage at the Property to Mount Vernon

and sought coverage under the Policy. Mount Vernon acknowledged receipt of 50 Exchange's notice of its losses and commenced an investigation into the claim.

17. On or about May 6, 2021, Mount Vernon explicitly communicated that it had "made the decision to accept coverage" for 50 Exchange's losses.

18. Over many months, Mount Vernon and 50 Exchange worked cooperatively to ascertain the amount of the loss and the policy benefits that would be paid to 50 Exchange.

19. Ultimately, Mount Vernon concluded that it would cost 50 Exchange **at least** $1,531,170.65 to repair the damage at the Property. 50 Exchange disagreed with Mount Vernon's repair cost estimate and continues to maintain that Mount Vernon has significantly understated the reasonable cost to repair the damage at the Property. Indeed, 50 Exchange has obtained estimates suggesting it will cost as much as $2,500,000 (if not more) to fully repair the damage to the Property and Plaintiff continues to be harmed each day the property remains damaged.

20. Notwithstanding the parties disagreement over the full amount of the covered loss, based on its own repair cost estimate, Mount Vernon paid 50 Exchange a total of $984,105.34 to cover the cost to repair the damage at the Property. However, Mount Vernon withheld $542,065.01 to account for supposed "depreciation" at the Property prior to the loss.

21. On or about March 9, 2023, representatives of 50 Exchange and Mount Vernon participated in a telephone call to discuss what would be required for Mount Vernon to release the $542,065.01 withheld for supposed "depreciation."

22. Mount Vernon's representative—adjuster Michael Berry—advised that the withheld sums would be promptly released as payments were made by 50 Exchange to its contractor to repair the damage at the Property. This phone call was memorialized in a subsequent e-mail, in which Mr. Berry confirmed that "[w]hen the contractor is paid I will issued [sic] the amount of recoverable depreciation that is owed." He added that, "[i]n order to collect the entire depreciation amount," 50 Exchange would need to provide proof of payment of at least the full amount of Mount Vernon's repair cost estimate, adding that "[a]nything less than this

amount will lessen the amount of depreciation I would owe."

23. Thus, as confirmed by Mr. Berry and Mount Vernon, 50 Exchange is entitled to immediate payment of $542,064.01 under the Policy upon proof that 50 Exchange paid at least that amount to its contractor which is exactly what 50 Exchange did in reliance on that representation by Mount Vernon.

24. However, Mount Vernon's subsequent actions do not negate that Mount Vernon fraudulently withheld $542,064.01 in coverage for supposed "depreciation." In other words, Mount Vernon always knew that they were never going to provide $1,531,170.65 in coverage.

25. This conduct by Mount Vernon induced 50 Exchange to detrimentally rely upon the full $1,541,170.65 in order to start making the necessary repairs to the property. As a result, 50 Exchange has now spent more than the $984,105.34 Mount Vernon promised and 50 Exchange continues to be harmed each day the property goes unrepaired based upon Mount Vernon's false misrepresentations.

26. Specifically, notwithstanding its prior promises, Mount Vernon has recently invoked the Policy's Appraisal condition and asserted that it will seek an appraisal of the amount of the loss if 50 Exchange continues to pursue additional sums owed under the Policy.

27. This position is directly contrary to the positions Mount Vernon had previously taken, including its position that it would cost at least $1,531,170.65 to repair the damage at the Property and its confirmation that the $542,064.01 in withheld benefits would be released upon proof that 50 Exchange had paid $984,105.34. 50 Exchange has now spent more than the $984,105.34.

28. As a practical matter, Mount Vernon's position and newfound insistence on an appraisal is severely frustrating 50 Exchange's efforts to repair the damage at the Property. Indeed, in connection with the ongoing repair efforts, 50 Exchange already has spent more than the $984,105.34 paid by Mount Vernon.

29. In order to continue making progress on the repairs, 50 Exchange must advance significant sums to its contractor in the coming months. Although 50 Exchange has requested

that Mount Vernon simply pay the $542,064.01 directly to 50 Exchange's contractor, Mount Vernon has disregarded its insured's request. Plaintiff is only in this predicament based upon Mount Vernon's false misrepresentations.

30. But, before an appraisal can even commence (without conceding an appraiser is necessary), the parties must receive guidance from the Court as to the proper scope of the appraisal. Under insurance industry custom and practice (and consistent with Mount Vernon's prior representations), the scope of the appraisal should be limited to the amount of loss in dispute—which the parties agree that it will cost at least $1,531,170.65 to repair.

31. The fact that the parties may have a broader dispute over the full extent of the loss does not excuse Mount Vernon's obligation to promptly pay undisputed sums owed under the Policy.

32. 50 Exchange is informed and believes, and on that basis alleges, that Mount Vernon disputes 50 Exchange's contentions regarding the proper scope of any appraisal proceeding.

33. 50 Exchange is further informed and believes, and on that basis alleges, that Mount Vernon is insisting on an appraisal and refusing to release any of the $542,064.01 previously withheld in an effort to put financial pressure on 50 Exchange and coerce its insured to accept less than it is otherwise entitled to receive under the Policy. Mount Vernon's conduct is contrary to the terms of its Policy, the law, the facts, and insurance industry custom and practice. It also constitutes bad faith.

**COUNT ONE**

(Breach of Contract against Mount Vernon)

34. 50 Exchange realleges and incorporates by reference the allegations contained in paragraph 1 through 33 above.

35. Implied in the Policy is a covenant that Mount Vernon would act in good faith and deal fairly with 50 Exchange, would do nothing to interfere with 50 Exchange's right to receive the benefits due under the Policy, and would give at least the same level of consideration

to 50 Exchange's interests as it gives to its own interests—this includes the fraudulent misrepresentations made by Mount Vernon.

36. Mount Vernon also had a duty under the Policy, the law, and insurance industry custom and practice to promptly conduct a full and thorough investigation, including all bases that might support 50 Exchange's claim for coverage.

37. Mount Vernon has breached its duties under the Policy by, among other things,

(a) Making fraudulent misrepresentations on coverage;

(b) Failing and refusing to pay for the full amount necessary to repair the damage at the Property;

(c) Unreasonably insisting on an appraisal with a greater scope than is permitted under the terms of the Policy, the facts, the law, and insurance industry custom and practice;

(d) Asserting grounds for disputing coverage that it knows are not supported by, and are contrary to, the terms of the Policy, the law, insurance industry custom and practice, the parties' course of dealings, and the facts;

(e) Failing to conduct an adequate investigation of 50 Exchange's losses, and asserting grounds for disputing coverage based on its inadequate investigation;

(f) Failing to fully inquire into possible bases that might support coverage for 50 Exchange's losses;

(g) Unreasonably adopting and relying on illogical, superficial, unreliable, and unreasonable analysis that Mount Vernon knows, or should know, are contrary to the facts and defy common sense;

(h) By giving greater consideration to its own interests than 50 Exchange's interests; and

(i) By otherwise acting as alleged above.

38. As a direct and proximate result of Mount Vernon's breach of contract, 50

Exchange has sustained damages in an amount to be determined at trial but presently estimated to exceed $1,500,000, plus interest at the legal rate.

**COUNT TWO**

(Breach of the Implied Covenant of Good Faith and Fair Dealing against Mount Vernon)

39. 50 Exchange realleges and incorporates by reference the allegations contained in paragraph 1 through 38 above.

40. Implied in the Policy is a covenant that Mount Vernon would act in good faith and deal fairly with 50 Exchange, would do nothing to interfere with 50 Exchange's right to receive the benefits due under the Policy, and would give at least the same level of consideration to 50 Exchange's interests as it gives to its own interests—this includes the fraudulent misrepresentations made by Mount Vernon.

41. Mount Vernon also had a duty under the Policy, the law, and insurance industry custom and practice to promptly conduct a full and thorough investigation, including all bases that might support 50 Exchange's claim for coverage.

42. Instead of complying with these duties, Mount Vernon has acted in bad faith and in conscious disregard of 50 Exchange's rights by, among other things,

(a) Making fraudulent misrepresentations on coverage;

(b) Failing and refusing to pay for the full amount necessary to repair the damage at the Property;

(c) Unreasonably insisting on an appraisal with a greater scope than is permitted under the terms of the Policy, the facts, the law, and insurance industry custom and practice;

(d) Asserting grounds for disputing coverage that it knows are not supported by, and are contrary to, the terms of the Policy, the law, insurance industry custom and practice, the parties' course of dealings, and the facts;

(e) Failing to conduct an adequate investigation of 50 Exchange's losses, and asserting grounds for disputing coverage based on its inadequate

investigation;

(f) Failing to fully inquire into possible bases that might support coverage for 50 Exchange's losses;

(g) Unreasonably adopting and relying on illogical, superficial, unreliable, and unreasonable analysis that Mount Vernon knows, or should know, are contrary to the facts and defy common sense;

(h) By giving greater consideration to its own interests than 50 Exchange's interests; and

(i) By otherwise acting as alleged above.

43. In breach of the implied covenant of good faith and fair dealing, Mount Vernon did the things and committed the acts alleged above for the purpose of consciously and fraudulently withholding from 50 Exchange the rights and benefits to which 50 Exchange is entitled under the Policy.

44. Mount Vernon's acts are inconsistent with 50 Exchange's reasonable expectations, are contrary to established claims practices and legal requirements, and constitute bad faith.

45. As a direct and proximate cause of Mount Vernon's breach of the implied covenant of good faith and fair dealing, 50 Exchange has sustained damages in an amount to be determined at trial but presently estimated to exceed $1,500,000. 50 Exchange continues to suffer damages because of Mount Vernon's bad faith.

46. 50 Exchange is informed and believes, and on that basis alleges, that Mount Vernon—acting through one or more if its officers, directors, or other corporate employees with substantial independent and discretionary authority over significant aspects of Mount Vernon's business—performed, authorized, and/or ratified the bad faith conduct alleged above.

**COUNT THREE**

(Fraud against Mount Vernon)

47. 50 Exchange realleges and incorporates by reference the allegations contained in

paragraph 1 through 46 above.

48. Mount Vernon fraudulently misrepresented to 50 Exchange that it would provide $1,531,170.65 for the necessary property repairs.

49. Mount Vernon has since withheld $542,064.01 of the $1,531,170.65 as promised for supposed "depreciation" at the Property.

50. At the time Mount Vernon made these false representations, Mount Vernon knew them to be false as they were always going to withhold $542,064.01 in coverage.

51. Therefore, Mount Vernon intended to deceive 50 Exchange into committing to repairs close to the $1,531,170.65 commitment; thereby induing 50 Exchange to rely upon these representations to their detriment.

52. Thus, as confirmed by Mr. Berry and Mount Vernon, 50 Exchange is immediately owed $542,064.01 under the Policy upon proof that it supplied in reliance on Mr. Berry's misrepresentations.

53. 50 Exchange has now spent more than the $984,105.34 Mount Vernon has provided based upon their false misrepresentations and 50 Exchange continues to be harmed each day the property goes unrepaired.

## COUNT FOUR

(Negligent Misrepresentation against Mount Vernon)

54. 50 Exchange realleges and incorporates by reference the allegations contained in paragraph 1 through 53 above.

55. Mount Vernon knew the representation of committing $1,531,170.65 in property repairs was a material fact.

56. At the time of the misrepresentation, Mount Vernon knew the representation to be false or made it under circumstances in which it ought to have known it to be false as it always intended to withhold $542,064.01 for supposed "depreciation" at the Property.

57. Mount Vernon intended to induce 50 Exchange into repairs close to the estimate amount of $1,531,170.65.

58. 50 Exchange has now spent more than the $984,105.34 Mount Vernon has provided based upon their false representations and 50 Exchange continues to be harmed each day the property goes unrepaired.

**COUNT FIVE**

(Declaratory Relief Against Mount Vernon)

59. 50 Exchange realleges and incorporates by reference the allegations contained in paragraph 1 through 59 above.

60. An actual and justiciable controversy exists between 50 Exchange and Mount Vernon. 50 Exchange contends that, in addition to the amounts Mount Vernon has paid to date, Mount Vernon has a duty to indemnify 50 Exchange for an additional amount to be proven at trial but presently estimated to exceed $1,500,000 to cover the cost to repair damage at the Property, plus interest at the legal rate. 50 Exchange is informed and believes, and on that basis alleges, that Mount Vernon disputes coverage for some or all of these amounts.

61. An actual and justiciable controversy also exists with respect to the scope of the appraisal that Mount Vernon has demanded. 50 Exchange contends that any such appraisal should only concern amounts of loss in excess of $1,531,170.65. 50 Exchange is informed and believes, and on that basis alleges, that Mount Vernon disputes this contention and maintains that the appraisal should concern all unpaid amounts of loss, even those below $1,531,170.65.

62. Therefore, declaratory relief is necessary to determine 50 Exchange's rights under the Policy. Specifically, 50 Exchange seeks a judicial declaration confirming that Mount Vernon's contentions as stated above are wrong and that 50 Exchange's contentions as stated above are correct; that Mount Vernon must honor all duties under the Policy, including its duty to pay for 50 Exchange's losses; that the scope of the appraisal demanded by Mount Vernon is limited to amounts of loss above $1,531,170.65; and that because of Mount Vernon's conduct, 50 Exchange is excused from performing or complying with any conditions and duties otherwise imposed on it by the Policy.

///

**COUNT SIX**

(Declaratory Relief Against Does 1 through 10)

63. 50 Exchange realleges and incorporates by reference the allegations contained in paragraph 1 through 62 above.

64. 50 Exchange Terrace contends that it was entitled to a full defense and indemnity with respect to the Arbitration. 50 Exchange Terrace is informed and believes, and on that basis alleges, that Does 1 through 10 dispute that 50 Exchange Terrace was entitled to a defense and indemnity with respect to the Arbitration. Therefore, an actual and justiciable controversy exists between 50 Exchange Terrace and Does 1 through 10 concerning the matters alleged in this complaint.

65. 50 Exchange Terrace seeks a judicial declaration as to the duties of Does 1 through 10, including their duties to provide a defense and indemnity in the Arbitration, confirming that 50 Exchange Terrace 's contentions, as stated above, are correct. A declaration is necessary in order that the parties' dispute may be resolved and that they may be aware of their respective rights and duties.

**COUNT SEVEN**

(Attorney's Fees against Mount Vernon)

66. 50 Exchange realleges and incorporates by reference the allegations contained in paragraph 1 through 65 above.

67. There is a complete absence of a justiciable issue of either law or fact relating to Mount Vernon's breaches of its agreement with 50 Exchange.

68. 50 Exchange is therefore entitled to its reasonable attorneys' fees under R.I. Gen. Laws § 9-1-45.

///

///

**WHEREFORE**, 50 Exchange Terrace hereby demands judgment against Mount Vernon Specialty Insurance Company on all counts of this complaint, costs, reasonable attorneys' fees, interest, and all further appropriate relief.

Respectfully Submitted,

Plaintiff,
**50 Exchange Terrace, LLC**

By and through its Attorneys,

/s/ Kimberly Casper, Esq.
Kimberly Casper, Esq. (#10513)
Geragos & Geragos, APC
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, CA 90017
Tel. (213) 625-3900
Fax (213) 232-3255

DATED: April 15, 2024